UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

The Valspar Corporation,

                              Plaintiff,                  Civ. No. 14-1620 (RHK/BRT)

v.                                                  **MEMORANDUM OPINION
AND ORDER**

National Union Fire Insurance
Company of Pittsburgh, PA,

                              Defendant.

_____

Thomas C. Mielenhausen, Christopher L. Lynch, Barnes & Thornburg LLP, Minneapolis, Minnesota, Andrew J. Detherage, John P. Fischer, Barnes & Thornburg, LLP, Indianapolis, Indiana, for Plaintiff.

Robert E. Salmon, Dorothy Jaworski Paxton, Laura J. Hanson, Meagher & Geer, PLLP, Minneapolis, Minnesota, Joseph A. Hinkhouse, Smita Mokshagundam, Hinkhouse Williams Walsh LLP, Chicago, Illinois, for Defendant.

_____

## INTRODUCTION

In this declaratory-judgment action, Plaintiff The Valspar Corporation ("Valspar") seeks to recover from its insurer, Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), nearly $3 million it expended defending a lawsuit in this Court. Presently before the Court is National Union's Motion to Dismiss or Stay in favor of arbitration. For the reasons that follow, its Motion will be granted.

## BACKGROUND

<u>The Marvin Action.</u>  In October 2010, Valspar, a large paint and coating manufacturer, was named a third-party defendant in a lawsuit in this Court captioned <u>Marvin Lumber & Cedar Co. v. Sapa Extrusions, Inc.</u>, Civ. No. 10-3881 (the "Marvin

Action"). In that action, Marvin, a manufacturer of windows and doors, alleged that certain products it made with aluminum obtained from Sapa were prematurely failing, causing property damage to its customers. Sapa, in turn, brought third-party claims against Valspar, which had coated the aluminum, claiming the coatings were defective. The undersigned presided over the Marvin Action, which was highly contentious and lasted for several years before Valspar obtained summary judgment in its favor. Ultimately, it expended nearly $4 million defending the case.

    The Policies and their Endorsements. National Union issued two insurance policies to Valspar potentially applicable to the claims asserted against it in the Marvin Action, referred to as the "2000 Policy" and the "2001 Policy" (collectively, the "Policies"). Each Policy was modified by a Deductible Endorsement establishing a $1 million deductible and further providing that "you," meaning Valspar, "must reimburse us," meaning National Union, "for all 'Allocated Loss Adjustment Expense' we pay . . . up to the deductible limit." (Fischer Decl. Ex. 1, § I.) The term "Allocated Loss Adjustment Expense" was defined to include attorneys' fees and other costs incurred in the "defense of a . . . claim or suit against" Valspar. (Id., § III.) Neither the Policies nor their Endorsements contained any provision for arbitration of disputes between the parties.

    The Payment Agreement and Direct Payment Addendum. In addition to the Policies and their various endorsements, however, Valspar and National Union also entered into an agreement styled as the "Payment Agreement," which was modified by a

"Direct Payment Addendum." It is the Payment Agreement upon which National Union relies in seeking arbitration of the present dispute.[1]

National Union describes the Payment Agreement as a "credit agreement that sets forth the manner in which Valspar must satisfy its payment obligations" to the insurer. (Def. Mem. at 3.) The Agreement provided that National Union would "extend credit to you [Valspar] by deferring our demand for full payment of the entire amount of 'Your Payment Obligation' if you make partial payments according to th[e] Agreement." (Doc. No. 19, Ex. E at 3.) The Agreement defined the term "Your Payment Obligation" as "the amounts that you must pay us for the insurance and services in accordance with the terms of the Policies," including "Deductible Loss Reimbursements," that is, amounts "we pay that you must reimburse us for under any 'Deductible' . . . provisions of a Policy." (Id. at 3-4.) The upshot, then, is that the Payment Agreement dictated the terms under which Valspar was obligated to reimburse National Union, up to the deductible, for amounts it expended on Valspar's behalf.

The Payment Agreement contained a dispute-resolution provision providing that "[i]f you disagree with us about any amount of Your Payment Obligation that we have asked you to pay," the disagreement "must immediately be submitted to arbitration." (Id. at 8.) It further provided that "[a]ny other unresolved dispute arising out of this

---

[1] Although, as discussed in more detail below, the Amended Complaint does not reference the Payment Agreement or Direct Payment Addendum, the Court nevertheless may consider them because a motion to dismiss or stay in favor of arbitration is analogous to a motion to dismiss for lack of subject-matter jurisdiction. Jann v. Interplastic Corp., 631 F. Supp. 2d 1161, 1162 n.1 (D. Minn. 2009) (Kyle, J.) (matters beyond the pleadings appropriately considered on motion to dismiss for lack of subject-matter jurisdiction).

Agreement must be submitted to arbitration" and that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." (Id.)

As noted above, the Payment Agreement was further modified by the Direct Payment Addendum. Under the Addendum, Valspar agreed to "assume" from National Union "the direct responsibility for the payment of Obligations," including any Allocated Loss Adjustment Expense.[2] (Id. Ex. F.) It is undisputed that the net effect of the Addendum was to allow Valspar to pay its defense costs directly, rather than having them paid by National Union and then having to reimburse the insurer up to the $1 million deductible.

The present dispute. As noted above, Valspar expended close to $4 million defending itself in the Marvin Action; it paid these amounts directly to its counsel per the terms of the Direct Payment Addendum. Accordingly, it demanded reimbursement from National Union of approximately $3 million, representing the amount it had paid beyond its $1 million deductible. National Union acknowledged coverage under the Policies but a dispute arose whether Valspar's request was subject to only *one* $1 million deductible or *multiple* deductibles (for multiple Policy years).

On May 2, 2014, Valspar commenced this action against National Union in the Hennepin County, Minnesota District Court. It alleged that the parties had entered into "multiple insurance-related agreements that together formed what the parties have

---

[2] The Addendum uses the term "Allocated Loss Expense," not "Allocated Loss *Adjustment* Expense," but the parties have assumed they are synonymous and the Court follows their lead.

referred to as . . . the 'Program.'" (Compl. ¶ 6.) Program documents for the relevant years included "a comprehensive general liability policy, a . . . deductible endorsement, a payment agreement, and other documents that function as a single integrated agreement." (Id. ¶ 7.) The Complaint alleged that the Marvin Action triggered coverage "under the 2000-01 Policy/Program" but that National Union had failed to pay all of Valspar's defense costs in excess of the $1 million deductible. (Id. ¶¶ 13-16, 22.) Invoking diversity jurisdiction, National Union timely removed the action to this Court.

A short time later, National Union filed an arbitration demand regarding the parties' dispute. It then moved to dismiss or stay this action in favor of arbitration, arguing the arbitration clause in the Payment Agreement mandated arbitration and, regardless, the arbitrators must decide whether the present dispute is arbitrable. Notably, National Union pointed to Valspar's own allegations to assert the arbitration clause in the Payment Agreement was applicable to the parties' dispute. (See Doc. No. 18 at 11 n.5 (quoting the Complaint to argue that because "Valspar defines the 2000-01 Policy/ Program as 'a comprehensive general liability policy . . . , a Payment Agreement, a Schedule of Policies and Payments, and other documents' (emphasis added), Valspar admits that the basis of its claim for reimbursement is the Payment Agreement in addition to the policies").)

Valspar then moved to amend its Complaint to remove references to the Payment Agreement. It asserted that it was not seeking any relief under that Agreement but rather only under the Policy. Magistrate Judge Rau granted the Motion, and Valspar then filed an Amended Complaint (Doc. No. 48) removing all mention of the Payment Agreement.

A short time later, the Court denied National Union's Motion to Dismiss or Stay as moot, in light of the amendment. National Union then re-filed its Motion, reasserting its argument that the present dispute is arbitrable or, alternatively, the arbitrators must decide that question. The Motion has now been fully briefed and is ripe for disposition.

## STANDARD OF DECISION

Through the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, Congress established a strong federal policy in favor of arbitration. Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This language has been given broad application, reaching "to the limits of Congress' Commerce Clause power," Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 268 (1995), and no party here disputes the arbitration clause in the Payment Agreement is in a contract covered by the FAA.

Section 3 of the Act provides that a party believing an issue in a lawsuit is subject to arbitration may move the court to "stay . . . the action until such arbitration has been had in accordance with the terms of the agreement." When considering such a motion, doubts about arbitrability must be resolved in favor of arbitration, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000) (citations omitted). A court, rather than an arbitrator, decides the question of arbitrability unless the parties "clearly

and unmistakably" delegated that issue to the arbitrator. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

## ANALYSIS

In deciding whether to grant National Union's Motion, two questions must be answered: Is there a valid agreement to arbitrate between the parties? If so, does the dispute fall within the agreement's scope? E.g., Torres v. Simpatico, Inc., 781 F.3d 963, 968 (8th Cir. 2015); Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc., 516 F.3d 695, 699-700 (8th Cir. 2008). The first question need not detain the Court, as neither party here disputes the validity of the Payment Agreement or the arbitration clause contained therein.[3] The dispositive question, therefore, is whether the present dispute falls within the scope of the Payment Agreement's arbitration provision.

As noted above, the Payment Agreement provides (1) "[i]f you disagree with us about any amount of Your Payment Obligation that we have asked you to pay," the disagreement "must immediately be submitted to arbitration" and (2) "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration." The Court focuses its analysis (as do the parties) on the second clause, because it finds the first clause inapplicable.[4] But under that second clause, arbitration is required.

---

[3] To be precise, Valspar *does* argue a valid arbitration provision is lacking, but in doing so makes clear it is really arguing about the *scope* of the Payment Agreement's arbitration clause, not its *validity*. (See Mem. in Opp'n at 12 ("Any arbitration provision in the Payment Agreement . . . cannot apply *to this policy dispute*.") (emphasis added).)

[4] Under the first clause, arbitration is required only when a dispute arises about the "amount of Your Payment Obligation that we have asked you to pay." But National Union has not asked Valspar to pay anything; quite the contrary, Valspar paid all of the defense costs and now seeks reimbursement from National Union.

To be sure, the second clause in the arbitration provision is not as expansive as many arbitration clauses, particularly those requiring arbitration of disputes "relating to" an agreement or the parties' relationship.  Cf. Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (noting the phrase "relating to" is broader than the phrase "arising out of").  But contrary to Valspar's argument, the Eighth Circuit has construed the phrase "arising out of" as broad, particularly where (as here) an agreement contains no other "limiting language."  PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 837 (8th Cir. 2010).  And where a broad arbitration clause is involved, a dispute must be referred to arbitration as long as "the underlying factual allegations simply 'touch matters covered by'" it.  Id. (citation omitted); accord, e.g., 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (suggesting the words "all" or "any" in an arbitration clause should be construed broadly in favor of arbitration).

It would be hard to conclude that the claims in this action do not "touch" upon the Payment Agreement.  Indeed, although Valspar attempts to characterize this matter as only a *policy* dispute, even it recognized – in its initial Complaint – that its claims arose under *several* insurance documents, namely, the "2000-01 Policy/*Program*" – a "Program" that included not only the Policy, but also the Payment Agreement.  (Compl. ¶ 7 (emphasis added).)  Valspar cannot avoid that now simply by having deleted references to the Payment Agreement in its Amended Complaint.  Furthermore, even though the Policy does not contain an arbitration clause, the Payment Agreement, in which the clause is found, expressly provides that it is applicable to the Policy.  (Doc. No. 19, Ex. E at 3.)  In the Court's view, therefore, the two agreements work together and are

not so easily divorced. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Las Vegas Prof'l Football Ltd. P'ship, No. 09 Civ. 7490, 2009 WL 4059174, at *4 (S.D.N.Y. Nov. 17, 2009) (compelling arbitration and rejecting argument that policy and payment agreement, containing the same language as in this case, could be segregated); see also City of Visalia v. Chartis Inc., No. 1:12-CV-01181, 2013 WL 144959, at *3 (E.D. Cal. Jan. 11, 2013) (compelling arbitration of coverage dispute due to arbitration provision in payment agreement).[5]

Moreover, the Court agrees with National Union that but for the Payment Agreement, the present dispute would either not exist or look entirely different. Assume, for example, that Valspar and National Union had entered into the Policy, but not the Payment Agreement (and its Direct Payment Addendum). In that case, National Union would have undertaken Valspar's defense in the Marvin Action, as there is no dispute the claims in that case triggered the insurer's duty to defend. Hence, *National Union* would have paid all of the costs Valspar is now trying to recoup; there would be no claim for Valspar to assert, as it has done here. But in actuality, Valspar funded its own defense and then turned to National Union for reimbursement, and Valspar did so only because the parties *also* entered into the Payment Agreement and Direct Payment Addendum. In other words, the "Payment Agreement, as amended by the Addendum, is the only

---

[5] Each party points out that the other has taken contrary positions in other cases – that is, National Union has at times argued that a payment agreement can be separated from the policy it modifies, while Valspar has recognized that a payment agreement and policy work together and are not easily disconnected. Neither party, however, argues for the application of judicial estoppel, see, e.g., New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (judicial estoppel prevents a "party [that] assumes a certain position in a legal proceeding" from "thereafter, simply because his interests have changed, assum[ing] a contrary position"), and accordingly the contrary positions taken by the parties in prior cases add little to the mix.

document that explains why Valspar undertook its own defense and why it now seeks to recover some portion of those defense costs from National [Union]." (Reply Mem. at 12.)  Hence, the Court has little trouble concluding that Valspar's claims "touch matters covered by" the Payment Agreement and its arbitration clause.  PRM Energy, 592 F.3d at 837.[6]

Even if the Court harbored some doubt, however, referring the matter to arbitration still would be appropriate for two additional reasons.  First is the strong federal policy favoring arbitration.  In light of that policy, "[t]he scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration."  MedCam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005).  A court should therefore find a claim covered by an arbitration agreement "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Id. (citations omitted).  It would be especially difficult to so conclude here, given the broadly-worded arbitration provision in the Payment Agreement and the interconnectivity between that document and the Policies.  Second, the Payment Agreement reserves to the arbitrators "exclusive jurisdiction over the entire matter in dispute, *including any question as to its arbitrability*."  (Doc. No. 19, Ex. E at 9 (emphasis added).)  Accordingly, even if some doubt exists whether this matter should be

---

[6] The Court finds distinguishable Alticor, Inc. v. National Union Fire Insurance Co. of Pittsburgh, 411 F.3d 669 (6th Cir. 2005), upon which Valspar relies.  There, the Sixth Circuit affirmed the district court's decision not to compel arbitration where parties' dispute concerned the meaning and application of the term "occurrence," which was found only in the policy, not the payment agreement.  See also RCR Plumbing & Mech., Inc. v. ACE Am. Ins. Co., No. EDCV 10-00995, 2011 WL 2412556, at *11 (C.D. Cal. June 3, 2011).

arbitrated or litigated, that question has been "clearly and unmistakably delegated to the arbitrators" to decide in the first instance. First Options, 514 U.S. at 944.[7]

Having concluded the parties' dispute should be referred to arbitration, the Court must next decide whether to stay this case or dismiss it. Although § 3 of the FAA discusses only a stay and not dismissal, some courts, including this one, have recognized that dismissal of an action in favor of arbitration may be appropriate "where it is clear the entire controversy between the parties will be resolved by arbitration." Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 770 (8th Cir. 2011) (citing Jann v. Interplastic Corp., 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009) (Kyle, J.)). Generally speaking, however, the statute "requires a federal district court to stay an action pending arbitration, rather than to dismiss it." Id. at 769. In the Court's view, that is the most appropriate course of action here. Accordingly, this action will be stayed pending arbitration.

---

[7] Valspar cites Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1371 (Fed. Cir. 2006), for the proposition that even where parties have agreed to delegate questions of arbitrability to the arbitrator, a court still must make a "limited inquiry" to determine whether the assertion of arbitrability is "wholly groundless." (Mem. in Opp'n at 30-31.) In other words, this "limited inquiry" is intended to "prevent[] a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." Qualcomm, 466 F.3d at 1373 n.5. Putting aside that no Eighth Circuit decision has adopted this line of reasoning, the Court concludes that National Union's demand for arbitration is not "wholly groundless" under the Payment Agreement, for the reasons already stated. See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n, 718 F.3d 1336, 1346-47 (Fed. Cir. 2013) ( "wholly groundless" inquiry asks only if there exists a "plausible argument" that the arbitration clause applies to the dispute), vacated on other grounds, __ U.S. __, 134 S. Ct. 1876 (2014).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that National Union's Motion to Dismiss or Stay (Doc. No. 50) is **GRANTED IN PART** and this action is **STAYED** pending arbitration.

Date: May 11, 2015

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge